IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HOME INSTEAD, INC., a Nebraska corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ELDERLY CARE SERVICES, LLC, a Nevada limited liability company; VITALY SALO, and IRINA SALO,<br><br>Defendants. | 8:23CV431<br><br>ORDER OF PERMANENT INJUNCTION |

THIS MATTER IS BEFORE THE COURT on the parties' Joint Motion and Stipulation for Entry of Judgment and Order of Permanent Injunction. Filing No. 41. The parties have settled the above-identified action. As part of the settlement, the parties stipulate to entry of the following Stipulated Order of Permanent Injunction in favor of Home Instead, Inc. ("Home Instead") and against Defendants Elderly Care Services, LLC, Vitaly Salo, and Irina Salo (collectively, "Defendants"). The Court accepts the parties' stipulation and enters an order in accordance therewith.

IT IS ORDERED:

1. Defendants shall de-brand their former franchised business for Home Instead franchise no. 505 ("Franchised Business") by no later than June 16, 2024. "De-brand" means that Defendants shall cease using all Home Instead's trade names, service marks, trademarks, emblems, and indicia of origin including, but not limited to the federally registered trademark Home Instead® (collectively, "Licensed Marks"); and all Home Instead's "Confidential Information," which for purposes of this Order is defined as all methods, techniques, formats, specifications, procedures, information, trade secrets,

1

systems and knowledge of and experience in the operation of Home Instead businesses including, without limitation, Home Instead's training program and operations manual.

2. Effective on the first day after Defendants de-brand or June 17, 2024, whichever comes first ("Effective Date"), Defendants and their respective officers, agents, employees, servants, representatives, attorneys, and all other persons under their authority or who are acting in concert with Defendants or on their behalf shall:

- A. Immediately and permanently cease to operate the Franchised Business under the franchise agreement for Home Instead franchise no. 505 ("Franchise Agreement") and shall not thereafter, directly, or indirectly, represent to the public or hold themselves out as a present or former franchisee of Home Instead;

- B. Immediately and permanently cease to use, in any manner whatsoever, any confidential methods, computer software, procedures, and techniques associated with Home Instead's unique and distinctive formats, systems, standards, and procedures (the "System") related to establishing and operating a unique business system for providing home care services for seniors;

- C. Immediately and permanently cease to order Home Instead Branded Products from Home Instead's approved suppliers;

- D. Immediately and permanently cease to use the Licensed Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System including, without limitation, signs, advertising materials, displays, stationary, forms, and any other articles that display a Licensed Mark;

E. At Defendants' expense, make any modifications or alterations necessary to distinguish their business office from its appearance while it was operated as a Home Instead® business so as to prevent any possibility of confusion by the public (including removal of all distinctive physical and structural features identifying it as a Home Instead® business and removal of all distinctive signs and emblems);

F. Take any action required to cancel all fictitious or assumed names or equivalent registrations relating to any of the Licensed Marks;

G. Notify all listing agencies of the termination of Franchisee's right to use any regular, classified, or other telephone directory listings associated with the Licensed Marks;

H. Deliver to Home Instead (1) the Home Instead operations manual, and any copies or duplicates of same (regardless of form); (2) all software or other programs licensed by Home Instead; and (3) upon Home Instead's request, and at Home Instead's reasonable photocopying and shipping expense with a vendor of Home Instead's choice, copies of all records, files, instructions, correspondence, agreements, invoices, and all other materials relating to the operation of the Franchise Business;

I. Furnish to Home Instead, within thirty (30) days after the Effective Date, evidence satisfactory to Home Instead of Defendants' compliance with paragraphs 3(a) through 3(h);

J. Comply with the restrictions on Home Instead's Confidential Information by (i) not using Home Instead's Confidential Information in any other business

or capacity; (ii) maintaining the absolute confidentiality of Home Instead's Confidential Information; and (iii) not making any unauthorized copies of any portion of Home Instead's Confidential Information;

K. For a period of two (2) years from the Effective Date ("Noncompetition Period"), refrain from either directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership, corporation, limited liability company, or other entity or arrangement:

   i. Divert or attempt to divert any business or customers of any other Home Instead® business to any business that focuses on seniors and provides services within the scope of "Approved Services" to seniors who need care in their homes, by direct or indirect inducement or otherwise, unless expressly authorized to do so in writing by Home Instead;

      a. For purposes of this Order, "Approved Services" is defined as those services that Defendants were authorized to provide to clients while they were a franchisee of Home Instead including: (1) companionship and home helper services; (2) personal care services; (3) specialized services; and (4) nurse directed services;

   ii. Do or perform, directly or indirectly, any act injurious or prejudicial to the good will associated with the Licensed Marks and the System; or

   iii. Own, maintain or operate, make loans to, or have any other financial or beneficial interest in (including any type of interest in corporations,

partnerships, limited liability companies, trusts, unincorporated associations, joint ventures, or other entities), or advise or assist, any business that focuses on seniors and provides services within the scope of Approved Services to seniors within the exclusive area granted to any other Home Instead® business operated by another franchisee, Home Instead, or Home Instead's affiliates.

    a. During the Noncompetition Period, Defendants may engage in the conduct described in paragraph 3(k)(iii), above, in territories not currently included in any other Home Instead franchisee's exclusive area ("Open Area").

    b. Nothing contained in paragraph 3(k)(iii), supra, shall restrict Defendants from having no more than a combined total of four percent (4%) ownership interest in a business that would otherwise violate the restrictions in paragraph 3(k)(iii) so long as none of the Defendants are directly or indirectly operating, advising, or assisting such business.

    c. Nothing contained in paragraph 3(k)(iii), supra, shall restrict Defendants from providing services within the scope of Approved Services to seniors in the exclusive area granted to any other Home Instead® business if (i) those services are provided to a senior that resides within Defendants' former franchise territory or Open Areas and (ii) the services being

provided are temporary in nature and ancillary to the services provided to the senior at their residence.

3. This Order is binding and enforceable by citation of contempt of court. All proceedings relating to enforcement of or compliance with the terms of this Order shall be brought in the United States District Court for the District of Nebraska, which retains continuing jurisdiction to enforce the terms of this Order.

4. This Order is based upon the agreement of the parties and is not subject to appeal. The parties have waived findings of fact and conclusions of law. The parties agree and understand that this Order is entered under Fed. R. Civ. P. 65, and that this Order along with the Order and Judgment of Dismissal (issued separately) constitutes entry, without further notice, of a final judgment in this matter.

Dated this 5th day of June, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge